## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ELAINE HALL and MANUEL LOPEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiffs,<br><br>   v.<br><br>GENERAL MOTORS, LLC,<br><br>              Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Elaine Hall and Manuel Lopez ("Plaintiffs") bring this action against Defendant General Motors LLC ("Defendant" or "GM"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

### INTRODUCTION

1.     Plaintiffs bring this action individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased 2010 through 2016 Chevrolet Impala vehicles in the United States ("Class Vehicles") that were designed, manufactured, distributed, marketed, sold, and leased by Defendant.

2.     Beginning in 2007, if not before, Defendant knew that the Class Vehicles contain one or more design and/or manufacturing defects in their StabiliTrak electronic stability control system that can cause the system to engage when it should not (the "StabiliTrak Defect"). The StabiliTrak Defect

can cause the vehicle to pull to one side (particularly while turning), hesitate, jerk, brake/lock wheels, lose power and/or stall.

3.      The StabiliTrak Defect has been documented to occur under a variety of driving conditions, and presents a grave safety hazard that renders the Class Vehicles unreasonably dangerous to consumers because of the increased probability that the vehicle will be involved in an accident, as well as the possibility that Class Members may become stranded under unsafe conditions. Numerous owners have reported their vehicles pull to one side and/or emit a loud grinding noise while turning, others have reported hesitation, jerking, random braking/locking of the wheels, loss of power and stalling.  These symptoms are sometimes accompanied by illumination of one or more warning lights including the "ABS" warning light, the "Service StabiliTrak" warning light and the "Service Traction Control" warning light.   The following two consumer complaints are representative of the hundreds that have been filed with the National Highway Traffic Safety Administration ("NHTSA")[1] over the past decade:

> **NHTSA ID No. 10894672 July 30, 2016:**  MY CAR IS TRYING
> TO KILL ME. AT A COMPLETE STOP WHEN I HIT THE GAS
> THE TRACTION CONTROL COMES ON. MY DASH SAYS
> SERVICE STABILITRAK , TRACTION CONTROL AND ABS.
> I MUST TURN OFF THE TRACTION CONTROL TO DRIVE
> MY VEHICLE. WITH ALL THAT, IF I DRIVE UP HILL IT

---

[1] Spelling and grammatical errors in consumer complaints reproduced herein remain as found in the original.

2

TURNS THE TRACTION CONTROL ON, THE ABS AND TRACTION CONTROL LIGHT UP AND THE LIGHTS STAY ON. WHEN THE CAR IS RESTARTED ALL THE LIGHTS GO AWAY. TWICE I WAS PULLING ONTO THE HIGHWAY FROM A STOP. THAT SITUATION HAPPENED AND MY CAR DIDNT MOVE. LUCKILY THE CAR WAS ABLE TO MOVE OR ELSE I WOULD HAVE SEVERLY INJURED. THIS HAPPENS WITH MY VEHICLE DAILY. I TOOK MY CAR IN BECAUSE MY ALTERNATOR FAILED. I TOLD THE DEALERSHIP ABOUT A TSB FOR THE ISSUE AND THEY DID NOTHING. IT ALSO HAPPENS A LOT IF IM ACCELERATING WHILE TURNING A CORNER. THE DASH LIGHTS UP LIKE CHRISTMAS LIGHTS.

**NHTSA ID No. 10592608 March 14, 2014:** I WAS DRIVING AND AFTER MAKING A LEFT TURN, MY SERVICE TRACTION CONTROL, SERVICE BRAKE ASSIST, AND ABS LIGHT POPPED ON. IT WENT ON AND OFF FOR MANY DAYS AS I WOULD STOP AND THEN RE-START THE CAR. I FINALLY TOOK IT TO A CHEVY DEALERSHIP AND WAS TOLD THEY TESTED THE FRONT ABS CONNECTOR AND ADJUSTED THE TIMING. LIGHTS AND CODES WENT OFF FOR ABOUT TWO WEEKS THEN POPPED BACK ON UPON MAKING A LEFT TURN.  IN ADDITION TO THE LIGHTS AND CODES, THE CAR NOW MAKE A LOUD GRINDING NOISE AND THE CAR STALLS. I HAVE BEEN ATA LIGHT IN THE MIDDLE OF MAKING A TURN WHEN THE CAR WILL STALL AND NOT LET ME TAKE OFF-THE TRACTION CONTROL SYMBOL WILL COME ON AND I WILL BE STUCK TRING TO ACCELERATE.  THIS IS VERY DANGEROUS AS I HAVE ALMOST BEEN HIT FROM BEHIND FEW TIMES DUE TO NOT BEING ABLE TO ACCELERATE IN A TIMELY FASHION.

4.      In addition to the obvious safety hazard the StabiliTrak Defect poses, the cost to repair the StabiliTrak Defect can be exorbitant, requiring consumers to pay hundreds, if not thousands, of dollars.

5.      Plaintiffs are informed and believe, and based thereon allege, that beginning in 2008 Defendant issued Technical Service Bulletins ("TSBs") to only its dealers concerning the Class Vehicles' StabiliTrak systems which evidence Defendant's early knowledge of the Defect.[2]

6.      Plaintiffs are informed and believe, and based thereon allege, that despite notice of the StabiliTrak Defect from numerous consumer complaints, warranty data, and dealership repair orders, Defendant has not recalled the Class Vehicles to repair the StabiliTrak Defect, has not offered its customers a suitable repair or replacement free of charge, and has not offered to reimburse the Class Vehicles' current and former owners and leaseholders the costs they have incurred relating to diagnosing and repairing the StabiliTrak Defect.

7.      Plaintiffs are informed and believe, and based thereon allege, that Defendant knew that the Class Vehicles are defective and not fit for their intended purpose of providing consumers with safe and reliable transportation. Nevertheless, Defendant actively concealed the StabiliTrak Defect from Plaintiffs and the other Class Members, and failed to disclose it to them, at the time of purchase or lease and thereafter.  Had Plaintiffs and Class Members known about the StabiliTrak Defect, they would not have purchased the Class Vehicles or would have paid less for them.  As a result of their reliance on

_____

[2] The TSBs discussed herein were not disseminated to owners and lessees of the Class Vehicles.

Defendant's omissions, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in the value of their Class Vehicles.

## PARTIES

### A.    Plaintiffs

#### 1.    Plaintiff Elaine Hall

8.    Plaintiff Elaine Hall is a resident of Los Angeles, California.  In or about July 2017, Ms. Hall purchased a used 2016 Chevrolet Impala from Felix Chevrolet in Los Angeles, California, an authorized GM dealer.  Prior to purchasing, Ms. Hall spoke with the dealer sales representative about the vehicle, test drove the vehicle and closely inspected the vehicle for any damage or deficiencies.  Safety is important to Ms. Hall and she purchased the vehicle believing it to be safe.  At no time during the purchase process was Ms. Hall informed that the vehicle suffered from the StabiliTrak Defect, nor did she notice any symptoms of the StabiliTrak Defect.  Had Ms. Hall been informed that the vehicle suffered from the StabiliTrak Defect, she would not have purchased it.  Ms. Hall purchased her vehicle primarily for his personal, family, or household purposes.  Ms. Hall's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by GM.

9.    After purchasing her vehicle, Ms. Hall began to experience a loud grinding noise and hesitation when turning.  Sometimes these symptoms are

accompanied by illumination of the StabiliTrak and/or other related warning lights.

10.     On or about November 10, 2017, with 38,404 miles on her odometer, Ms. Hall took her vehicle to Felix Chevrolet complaining of the problems she was experiencing.  Felix Chevrolet confirmed that one or more warning lights were illuminated and performed diagnostic tests, but claimed the vehicle had stored no trouble codes and as a result performed no repairs. Following this visit, Ms. Hall continued and continues to experience the StabiliTrak Defect.

11.     At all relevant times, Ms. Hall's vehicle was driven in a foreseeable manner in which it was intended to be used.

### 2.     Plaintiff Manuel Lopez

12.     Plaintiff Manuel Lopez is a resident of Santa Maria, California.  On or about June 2013, Mr. Lopez purchased a used 2012 Chevrolet Impala vehicle from Stowasser Buick GMC ("Stonewasser") in Santa Maria, California, an authorized GM dealer.  Prior to purchase, Mr. Lopez spoke with the dealer sales representative about the vehicle, test drove the vehicle, reviewed a CarFax report regarding the vehicle and discussed internet research performed by his son concerning the vehicle.  Safety is important to Mr. Lopez and he purchased the vehicle believing it to be safe.  At no time during this process was Mr. Lopez informed that the vehicle suffered from the StabiliTrak Defect, nor did he notice

any symptoms of the StabiliTrak Defect.  Had Mr. Lopez been informed that the vehicle suffered from the StabiliTrak Defect, he would not have purchased it.  Mr. Lopez purchased his vehicle primarily for his personal, family, or household purposes.  Mr. Lopez's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by GM.

13.    Subsequent to Mr. Lopez's vehicle purchase, he began to experience a loud grinding noise when driving in reverse and when turning, as well as a pulling/jerking sensation when turning.  Sometimes these symptoms are accompanied by illumination of the StabiliTrak warning light and/or other related warning lights.

14.    On or about September 13, 2013 with 39,532 miles on his odometer, Mr. Lopez took his vehicle to Stonewasser complaining of the problems he was experiencing.  Stonewasser claimed that it was unable to duplicate the concern and performed no repairs. Following this visit, Mr. Lopez continued to experience the StabiliTrak Defect.

15.    On or about June 2, 2015 with 59,635 miles on his odometer, Mr. Lopez took his vehicle to Stonewasser again complaining of the problems he was experiencing.  Stonewasser replaced the hub bearing to address the issue for which Mr. Lopez paid a $100 insurance deductible.  Following this visit, Mr. Lopez continued to experience the StabiliTrak Defect.

16. On or about November 7, 2016 with 68,217 miles on his odometer Mr. Lopez took his vehicle in to Stowasser again complaining of the problems he was experiencing. Stonewasser claimed that it was unable to duplicate the concern and performed no repairs. Following this visit, Mr. Lopez continued and continues to experience the StabiliTrak Defect.

17. At all relevant times, Mr. Lopez's vehicle was driven in a foreseeable manner in which it was intended to be used.

**B.** **Defendant**

18. Defendant General Motors, LLC is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan 48243.

19. Defendant is responsible for the design, manufacture, distribution, marketing, sale and lease of the Class Vehicles.

20. Whenever, in this Complaint, reference is made to any act, deed or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendant.

## JURISDICTION & VENUE

21.     This is a class action.

22.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs.  This Court has general jurisdiction over Defendant because its principal place of business is located within this District.  For this same reason, venue is proper in this District.

## FACTUAL ALLEGATIONS

**A.**     **Background**

23.     An electronic stability control ("ESC") system is active-safety technology that is designed to proactively help drivers maintain control of their vehicles in situations where the vehicle is beginning to lose directional stability. This is achieved through the use of a computer which controls individual wheel brakes, or sometimes cuts power to the wheels, to send the car in the intended direction when the vehicle would otherwise skid.

24.     In 2003, GM became the first domestic manufacturer to offer an ESC system, the StabiliTrak system.[3]  The StabiliTrak control module compares

---

[3] *See* Bret Dick, *GMC 'Control Freak' Tech Avoids Crashes*, https://media.gm.com/media/us/en/gmc/news.detail.html/content/Pages/news/u

the steering input with the vehicle's actual response, and when necessary, makes small, individual brake and engine torque applications to enhance control and help keep the vehicle on track.[4]  The StabiliTrak control module is integrated with, and serves as a supplement to, the anti-lock braking system ("ABS") and the Traction Control System ("TCS").  It receives information about the speed and rotation of all four wheels from wheel speed sensors placed on each wheel and uses this information to compute whether braking pressure, or reducing engine power, is necessary to correct the vehicle's intended direction.

25.    A properly functioning ECS system enhances the driver's ability to stop and otherwise control his or her vehicle and can be a great boon to vehicle safety.  Conversely, a malfunctioning ESC system can pose an extreme hazard by causing a vehicle to randomly stop, hesitate, brake, loose power, pull to one side or even stall.

**B.      GM's Knowledge of the StabiliTrak Defect**

26.    For years, Defendant has designed, manufactured, distributed, sold and leased the Class Vehicles.  Upon information and belief, it has sold, directly or indirectly through dealers and other retail outlets, many thousands of Class Vehicles in California and nationwide.

---

s/en/2011/Apr/0413_terrain.html (GMC Press Room, Apr. 4, 2013) (last visited January 4, 2019). Exhibit 1

[4] *See* https://www.gmfleet.com/technology/stabilitrak.html (last visited January 18, 2019). Exhibit 2

27.     Plaintiffs are informed and believe, and based thereon allege, that as early as 2007, if not before, Defendant acquired its knowledge of the StabiliTrak Defect through sources not available to Plaintiffs and Class Members, including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Defendant's network of dealers and directly to Defendant, aggregate warranty data compiled from Defendant's network of dealers, testing conducted by Defendant in response to consumer complaints, and repair order and parts data received by Defendant from Defendant's network of dealers.

28.     Defendant's early knowledge of the StabiliTrak Defect is evidenced by, among other things, Defendant's issuance of multiple TSB's regarding the Defect.

29.     For example, on or about May 1, 2008, Defendant issued Manufacturer Communication No. PIC-4868 to NHTSA applicable to 2007-2009 Chevrolet Impalas, among other vehicles.  This Communication states: "ABS, TRACTION CONTROL, OR STABILITY TELL TALES ON (DTC C0035-C0052).   THE ABS, TRACTION CONTROL, OR SERVICE STABILITRAC SYSTEM (IF EQUIPPED) WARNING TELLTALES ILLUMINATE."  On information and belief, this Communication was issued

by Defendant in conjunction with a TSB regarding problems with the StabiliTrak system.

30.     Shortly thereafter, in or about October 27, 2008, Defendant issued TSB No. 08-05-025-004A applicable to 2007 through 2009 Chevrolet Impalas, among other vehicles.  The subject line of this TSB states: "Antilock Brake System (ABS), Traction Control System (TCS) or StabiliTrak(R) Light On, DTCs C0035-C0052 Set (Perform Diagnostic Component Test Procedure and Repair as Necessary)."  This TSB goes on to specify a diagnostic procedure for the wheel speed sensor ("WSS") (a component of the StabiliTrak system), including but not limited to testing of the ohms range between two signal terminals and checking for an intermittent circuit condition.  This TSB indicates that it supersedes TSB 08-05-25-004 which, on information and belief, was issued at some earlier point in time.  A copy of this TSB is attached hereto as Exhibit 3.

31.     In or about May of 2012, Defendant issued TSB No. PI0631C applicable to certain 2012 Chevrolet Impalas.  In the Condition/Concern section of this TSB Defendant notes that some customers may comment on one or more of the following conditions: the malfunction indicator (MIL) lamp is on; the ABS indicator turns on; the ABS system engages; the Traction Control indicator turns on; the Traction Control engages; the Service Stability System message displays.  This TSB goes on to state that "[t]this condition may be

caused by the engine wiring harness rubbing on the front side of the transmission" which can cause chaffing or damage to the wires, and specifies a procedure for diagnosing the condition.  A copy of this TSB is attached hereto as Exhibit 4.  On information and belief Defendant issued multiple additional iterations of this TSB after May of 2012 adding additional Chevrolet Impala vehicles.  For example, in or about February 2014 Defendant issued TSB PI0631I which expanded the covered vehicles to 2012-2013 Chevrolet Impalas built prior to a specified VIN breakpoint.  A copy of this TSB is attached hereto as Exhibit 5.  On information and belief, Defendant found it necessary to continuously update and expand the coverage of its TSBs because it continued to manufacture vehicles with known defects to avoid the costs associated with implementing a proper remedy.

32.   In or about April 2014, Defendant issued TSB No. PIC5992 applicable to the 2007-2013 Chevrolet Impala and 2014-2015 Chevrolet Impala Limited, among other vehicles.  The subject line of this TSB states: "Diagnostic Tip – ABS Lamp on With Any of the Following DTCs C0035 C0040 Or Unwanted Traction Control Activation."  This TSB goes on to specify a diagnostic procedure for the wheel speed sensor, specifically noting that ohm checking the WSS jumper harness may not identify a concern.  A copy of this TSB is attached hereto as Exhibit 6.  In or about May 2016, TSB No. PIC5992 was superseded by TSB No. PIC5992A, which updated the model years to

include the 2016 Chevrolet Impala (the content is otherwise the same).   A copy of this TSB is attached hereto as Exhibit 7.

33.    On information and belief, Defendant issued the above TSBs to address problems being caused by the StabiliTrak Defect.  Defendant had and has a duty to disclose the StabiliTrak Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Defendant had and has exclusive knowledge and/or access to material facts about the Class Vehicles and their StabiliTrak systems that were and are not known to or reasonably discoverable by Plaintiffs and other Class Members; and because Defendant has actively concealed the StabiliTrak Defect from its customers.

34.    Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the StabiliTrak Defect.   Complaints filed by consumers with the NHTSA and posted on the Internet demonstrate that the StabiliTrak Defect is widespread and dangerous.  Attached hereto as Exhibit 8 are example consumer complaints filed with the NHTSA for the 2007 through 2016 model years.  On information and belief, throughout the relevant time period Defendant monitored complaints submitted to NHTSA as part of its normal business operations.

35.    Although Defendant was aware of the widespread nature of the StabiliTrak Defect in the Class Vehicles, and the grave safety risk posed by it,

14

Defendant took no steps to notify customers of the StabiliTrak Defect or to provide them with any relief.

36. Customers have reported the StabiliTrak Defect in the Class Vehicles to Defendant directly and through its dealers. As a result of these reports and its own internal testing, among other things, Defendant was fully aware of the StabiliTrak Defect contained in the Class Vehicles throughout the Class Period. Nevertheless, Defendant actively concealed the existence and nature of the StabiliTrak Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter. Specifically, Defendant:

        a. Failed to disclose and/or actively concealed, at and after the time of purchase or repair, any and all known material defects or material nonconformities of the Class Vehicles, including the StabiliTrak Defect;

        b. Failed to disclose and/or actively concealed, at and after the time of purchase or repair, that the Class Vehicles and their StabiliTrak systems were not in good working order, were defective, and were not fit for their intended purpose; and,

        c. Failed to disclose and/or actively concealed, at and after the time of purchase or repair, the fact that the Class Vehicles and their StabiliTrak systems were defective, despite the fact that

15

Defendant learned of such defects as early as 2007, if not before.

37.    Defendant has deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the StabiliTrak Defect contained in the Class Vehicles.

38.    Defendant has not recalled the Class Vehicles to repair the StabiliTrak Defect, has not offered to its customers a suitable repair or replacement of parts related to the StabiliTrak Defect free of charge, and has not offered to reimburse Class Vehicle owners and leaseholders who incurred costs for repairs related to the StabiliTrak Defect.

39.    Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

40.    As a result of the StabiliTrak Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles.  Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's StabiliTrak system is not defective and will not place vehicle occupants at an increased risk of harm.  Plaintiffs and Class Members further expect and assume that Defendant will not sell or lease vehicles with known safety defects, such as the StabiliTrak Defect, and will disclose any such defect

to its customers prior to selling or leasing the vehicle, or offer a suitable repair. They do not expect that Defendant would fail to disclose the StabiliTrak Defect to them, and continually conceal the defect.

## TOLLING OF THE STATUTE OF LIMITATIONS

41.    Plaintiffs and the other Class Members were not reasonably able to discover the StabiliTrak Defect until after purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

42.    Despite their due diligence, Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and their StabiliTrak systems was concealed from them.  Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and the other Class Members.

43.    In addition, even after Plaintiffs and Class Members contacted Defendant and/or its authorized agents for vehicle repairs concerning the defective nature of the Class Vehicles and their StabiliTrak systems, Plaintiffs and Class Members were routinely told by Defendant directly and/or through its authorized agents for vehicle repairs that the Class Vehicles are not defective.

44.    Any applicable statute of limitation has also been tolled by Defendant's knowledge, active concealment, and denial of the defective nature of the Class Vehicles and their StabiliTrak systems.

## **CLASS ACTION ALLEGATIONS**

45.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

46.     The Classes are defined as:

> **Nationwide Class**:     All purchasers and lessees of any 2010 through 2016 Chevrolet Impala vehicles who reside in the United States (the "Nationwide Class").

> **California Sub-Class**: All Members of the Nationwide Class who purchased or leased Class Vehicles in the State of California (the "California Sub-Class").

> **CLRA Sub-Class**:  All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code §1761(d).

47.     Excluded from the Class and Sub-Classes are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class and Sub-Classes definitions if discovery and further investigation reveal that the Class and/or Sub-Classes should be expanded or otherwise modified.

48.    Numerosity: Although the exact number of Class and Sub-Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are, *inter alia*, readily identifiable from information and records in Defendant's possession, custody, or control.

49.    Typicality: The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class Members, paid for a Class Vehicle designed, manufactured, and distributed by Defendant in which the StabiliTrak system was defective. The representative Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that they have incurred or will incur the cost of diagnosing and repairing or replacing the defective StabiliTrak system and its related parts. Further, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and/or negligent misconduct resulting in injury to all Class Members.

50.    Commonality: There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members. These common legal and factual issues include the following:

a.  Whether the Class Vehicles suffer from the StabiliTrak Defect;

b.  Whether the StabiliTrak Defect constitutes an unreasonable safety risk;

c.  Whether Defendant knows about the StabiliTrak Defect and, if so, how long Defendant has known of the defect;

d.  Whether the defective nature of the Class Vehicles and their StabiliTrak systems constitutes a material fact;

e.  Whether Defendant had and has a duty to disclose the defective nature of the Class Vehicles and their StabiliTrak systems to Plaintiffs and the other Class Members;

f.  Whether Plaintiffs and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

g.  Whether Defendant knew or reasonably should have known of the StabiliTrak Defect contained in the Class Vehicles before it sold or leased them to Class Members;

h.  Whether Defendant violated the Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.*, as alleged in this Complaint;

i.  Whether Defendant has engaged in unlawful, unfair, or fraudulent business practices in violation of California

Business and Professions Code sections 17200 *et seq.*, as alleged in this Complaint;

j.  Whether Defendant fraudulently concealed and/or failed to disclose material facts concerning the Class Vehicles and their StabiliTrak systems; and

k.  Whether Defendant violated the implied warranty of merchantability.

51.  <u>Adequate Representation</u>:  Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

52.  <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the instant controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would, therefore, have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will

continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the court and the litigants and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

(Violation of Consumers Legal Remedies Act,

California Civil Code § 1750 *et seq.*, on behalf of the CLRA Sub-Class)

53.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

54.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the CLRA Sub-Class.

55.     Defendant is a "person" as defined by California Civil Code § 1761(c).

56.     Plaintiffs and the other Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

57.     By failing to disclose and concealing the defective nature of the Class Vehicles and their StabiliTrak systems from Plaintiffs and Class Members, Defendant violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their StabiliTrak systems had characteristics and benefits that they do not have, represented that the Class Vehicles and their StabiliTrak systems were of a particular standard, quality, or grade when they

were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.  *See* Cal. Civ. Code §§ 1770(a)(5), (7) & (9).

58.   Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

59.   Defendant knew that its Class Vehicles and their StabiliTrak systems suffered from an inherent defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

60.   Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles and their StabiliTrak systems and the associated repair costs because:

   a. Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles and their StabiliTrak systems;

   b. Plaintiffs and Class Members could not reasonably have been expected to learn or discover that their StabiliTrak systems have a dangerous safety defect until after they purchased the Class Vehicles;

   c. Defendant knew that Plaintiffs and Class Members could not

reasonably have been expected to learn about or discover the StabiliTrak Defect; and,

d. Defendant actively concealed the defective nature of the Class Vehicles and their StabiliTrak systems from Plaintiffs and Class Members at the time of sale and thereafter.

61.    By failing to disclose the StabiliTrak Defect, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

62.    The facts concealed or not disclosed by Defendant to Plaintiffs and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase or lease the Class Vehicles, or to pay less for them.  Had Plaintiffs and other Class Members known that the Class Vehicles and their StabiliTrak systems were defective, they would not have purchased or leased the Class Vehicles, or would have paid less for them.

63.    Plaintiffs and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from an StabiliTrak Defect. That is the reasonable and objective consumer expectation for vehicles and their StabiliTrak systems.

64.    As a result of Defendant's misconduct, Plaintiffs and the other Class Members have been harmed and have suffered actual damages in that the

Class Vehicles and their StabiliTrak systems are defective and require repair or replacement.

65.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs and the other Class Members have suffered and will continue to suffer actual damages.

66.    By letter dated August 15, 2018, and sent via certified mail, Plaintiffs provided Defendant with notice of its alleged violations of the CLRA pursuant to California Civil Code Section 1782(a) and demanded that Defendant rectify the problems associated with the behavior detailed above. As of the filing of this Complaint, Defendant has failed to respond to Plaintiffs' demands and has failed to give notice to all affected consumers, as required by California Civil Code Section 1782.

67.    Plaintiffs' counsel's Declaration, to the extent required under California Civil Code section 1780(d), which reflects that a Defendant resides and has its principal place of business in this judicial district, is attached hereto as Exhibit 9.

68.    Plaintiffs seek an order enjoining the acts and practices described above.

69.    Plaintiffs additionally seek actual damages, restitution, statutory and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper under Section 1780(a) of the CLRA pursuant to Civil Code

Section 1782(d), due to Defendant's failure to rectify or agree to adequately rectify its violations as detailed above.

## SECOND CAUSE OF ACTION

(Violation of Unfair Competition Law. California Business & Professions Code § 17200 *et seq.*, on behalf of the California Sub-Class)

70.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

71.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the California Sub-Class.

72.     California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

73.     Defendant knew that the Class Vehicles and their StabiliTrak systems suffered from an inherent defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

74.     In failing to disclose the StabiliTrak Defect, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

75.     Defendant was under a duty to Plaintiffs and the other Class Members to disclose the defective nature of the Class Vehicles and their StabiliTrak systems because:

a. Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles and their StabiliTrak systems;

b. Plaintiffs and Class Members could not reasonably have been expected to learn or discover that their StabiliTrak systems have a dangerous safety defect until after they purchased the Class Vehicles;

c. Defendant knew that Plaintiffs and Class Members could not reasonably have been expected to learn about or discover the StabiliTrak Defect; and,

d. Defendant actively concealed the defective nature of the Class Vehicles and their StabiliTrak systems from Plaintiffs and Class Members at the time of sale and thereafter.

76.     The facts concealed or not disclosed by Defendant to Plaintiffs and the other Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendant's Class Vehicles, or to pay less for them.  Had Plaintiffs and other Class Members known that the Class Vehicles suffered from the StabiliTrak

Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

77.    Defendant continued to conceal the defective nature of the Class Vehicles and their StabiliTrak systems even after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature of this systematic problem today.

78.    Defendant's omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of California Business and Professions Code section 17200 *et seq.*, in that Defendant's conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.  Plaintiffs also assert a violation of public policy arising from Defendant's withholding of material safety facts from consumers.  Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

79.    By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

80.    Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

81.   As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

82.   Defendant has been unjustly enriched and should be required to make restitution to Plaintiffs and Class Members pursuant to sections 17203 and 17204 of the Business & Professions Code.

83.   Plaintiffs also seek an order enjoining the acts and practices described above.

84.   Plaintiffs additionally seek attorneys' fees and costs, and any other relief that the Court deems proper, due to Defendant's violations of Section 17200 as detailed above.

## THIRD CAUSE OF ACTION

(Fraudulent Omission on behalf of the Nationwide Class, or in the alternative, the California Sub-Class)

85.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

86.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Nationwide Class, or, in the alternative, on behalf of the members of the California Sub-Class.

87.   Defendant knew or should have known that the Class Vehicles and their StabiliTrak systems were defectively designed and/or manufactured, would fail, and were not suitable for their intended use.

88.   Defendant concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Vehicles and their StabiliTrak systems.

89.   Defendant was under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles and their StabiliTrak systems because:

    a. Defendant was in a superior position to know the true state of facts

      about the safety defect contained in the Class Vehicles and their StabiliTrak systems;

    b. Plaintiffs and Class Members could not reasonably have been expected to learn or discover that their StabiliTrak systems have a dangerous safety defect until after they purchased the Class Vehicles;

    c. Defendant knew that Plaintiffs and Class Members could not reasonably have been expected to learn about or discover the StabiliTrak Defect; and,

    d. Defendant actively concealed the defective nature of the Class

Vehicles and their StabiliTrak systems from Plaintiffs and Class Members at the time of sale and thereafter.

90.   The facts concealed or not disclosed by Defendant to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay a lesser price for them.  Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles and their StabiliTrak systems, they would not have purchased or leased the Class Vehicles, or would have paid less for them.

91.   Defendant concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles and their StabiliTrak systems in order to induce Plaintiffs and Class Members to act thereon.   Plaintiffs and the other Class Members justifiably relied on Defendant's omissions to their detriment.   This detriment is evident from Plaintiffs' and Class Members' purchase or lease of Defendant's Class Vehicles.

92.   Defendant continued to conceal the defective nature of the Class Vehicles and their StabiliTrak systems even after Class Members began to report the problems.  Indeed, Defendant continues to cover up and conceal the true nature of the problem today.

93.     As a direct and proximate result of Defendant's misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

### FOURTH CAUSE OF ACTION

(Unjust Enrichment on behalf of the Nationwide Class, or in the alternative, the California Sub-Class)

94.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

95.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Nationwide Class, or, in the alternative, on behalf of the members of the California Sub-Class.

96.     As a direct and proximate result of its failure to disclose known defects, Defendant has profited through the sale and lease of the Class Vehicles. Although these vehicles are purchased through Defendant's dealers, the money from the vehicle sales flows directly back to Defendant, to which it confers and unjust, substantial benefit.

97.     As a direct and proximate result of its failure to disclose known defects in the Class Vehicles, Defendant also profited, at Plaintiffs' and Class Members' expense, from repeated and high-cost repairs that similarly confer an unjust, substantial benefit on Defendant through part sales and proprietary diagnostic tools.

98.     Defendant has been unjustly enriched due to the known defects in the Class Vehicles through money paid that earned interest or otherwise add to Defendant's profits when it should have remained with Plaintiffs and Class Members.

99.     As a result of the Defendant's unjust enrichment, Plaintiffs and Class Members have suffered damages.

## **RELIEF REQUESTED**

100.    Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against Defendant, and issue an order providing the following relief:

> a. That Defendant provide notice, in a form pre-approved by Plaintiffs, to all Class Members and, in the notice, offer to repair, without charge, the StabiliTrak Defect contained in the Class Vehicles;
>
> b. That Defendant provide notice, in a form pre-approved by Plaintiffs, to all Class Members and, in the notice extend the warranty for the Class Vehicles' StabiliTrak systems to 10-years/120,000-miles, whichever is later;
>
> c. That Defendant immediately cease the sale and lease of the Class Vehicles at all of Defendant's authorized dealerships without first notifying the purchasers or lessees of the

StabiliTrak Defect, and otherwise immediately cease to engage in the violations of the law set forth above;

d.  That Defendant pay damages and restitution in an amount to be proven at trial;

e.  An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as named representatives of the Class and Sub-Classes, and designating the undersigned as Class Counsel;

f.  A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles and their StabiliTrak systems;

g.  An award to Plaintiffs and Class Members of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

h.  A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class Members;

i.  An award of attorneys' fees and costs, as allowed by law;

j.  An award of attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5;

k. An award of pre-judgment and post-judgment interest, as provided by law;

l. Leave to amend the Complaint to conform to the evidence produced at trial; and

m. Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: January 18, 2019                     Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
**The Miller Law Firm, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com

*Attorneys for Plaintiffs and Putative Class*

**GREENSTONE LAW PC**
Mark Greenstone
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Tel: (310) 201-9156
mgreenstone@greenstonelaw.com

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Marc L. Godino
Danielle L. Manning
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
lglancy@glancylaw.com
mgodino@glancylaw.com
dmanning@glancylaw.com